Michael L. Baum, Esq. (SBN: 119511)
mbaum@baumhedlundlaw.com
R. Brent Wisner, Esq. (SBN: 276023)
rbwisner@baumhedlundlaw.com
Adam M. Foster, Esq. (SBN: 301507)
afoster@baumhedlundlaw.com
Pedram Esfandiary, Esq. (SBN: 312569)
pesfandiary@baumhedlundlaw.com
**BAUM, HEDLUND, ARISTEI, & GOLDMAN, P.C.**
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Telephone:  (310) 207-3233
Facsimile:  (310) 820-7444

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC, a Delaware Limited Liability Company, MAO-MSO RECOVERY II, LLC, a Delaware entity; MSP RECOVERY, LLC, a Florida entity; and MSPA CLAIMS 1, LLC, a Florida entity,<br><br>Plaintiffs,<br><br>vs.<br><br>MALLINCKRODT ARD INC., Formerly known as QUESTCOR PHARMACEUTICALS, INC., a California Corporation,  MALLINCKRODT PLC, an Irish Public Limited Company, and UNITED BIOSOURCE  CORPORATION, a Delaware Corporation,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

1.     Plaintiffs MSP Recovery Claims, Series LLC, MSPA Claims 1, LLC, MAO-MSO Recovery, LLC, and MAO-MSO Recovery II, LLC (collectively, "Plaintiffs") on behalf of themselves and all others similarly situated, bring this action against Mallinckrodt ARD Inc., formerly known as Questcor Pharmaceuticals, Inc. (hereinafter for clarity purposes, "Questcor"), Mallinckrodt PLC, and United Biosource Corporation ("UBC"; collectively, "Defendants") and state as follows:

2.     The claims in this case arise from Defendants' scheme to inflate prices and reduce competition for a drug known as Acthar Gel ("Acthar") causing payers like Plaintiffs to pay more for drugs than they otherwise would have paid.  Plaintiffs contend that Defendants are engaged in monopolistic, anti-competitive behavior by purchasing and shelving the only potential competitor to Acthar, enabling Defendants to exponentially raise the price for Acthar.

3.     Plaintiffs and putative class members suffered damages as a result of Defendants' anti-competitive conduct, and this lawsuit seeks reimbursement for those overpayments.  Plaintiffs were assigned the recovery rights from direct payer Medicare Advantage Organizations ("MAOs") who purchased or provided reimbursement for Acthar.

## JURISDICTION AND VENUE

4.     Plaintiffs bring this action to recover treble damages, attorneys' fees, litigation expenses, court costs, and secure injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, pursuant to Sections 4 and 16 of the Clayton Act of 1914 ("Clayton Act"), 15 U.S.C. §§ 15 and 26, and violations of Section 16720 of California's Cartwright Act.

5.     The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332 (d)(2), 1337(a), 1407, and 15 U.S.C. § 15. Furthermore, the aggregate amount in controversy exceeds $5,000,000.

6.     Venue is proper in this District pursuant to 15 U.S.C. §§ 15(a), 22 and 28 U.S.C.

§§ 1391(b), (c), and (d) because during the Class Period (January 1, 2011 to the Present), Defendants resided, transacted business, were found, or had agents in this District, and a substantial portion of the alleged activity affecting interstate trade and commerce, discussed below, has been carried out in this District.

7.      Defendants' conduct, as described in this Complaint, was within the flow of, was intended to, and did have a substantial effect on, the interstate commerce of the United States, including in the Central District of California.

## THE PARTIES

8.      MSP Recovery Claims, Series LLC, is a Delaware entity with its principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155.

9.      Plaintiff MSPA Claims 1, LLC is a Florida entity, with its principal place of business located at 2600 S. Douglas Rd., Suite 1008, Coral Gables, Florida 33134.

10.     Plaintiff MAO-MSO Recovery, LLC is a Delaware entity with its principal place of business at 5000 S.W. 75th Avenue, Miami, Florida 33155.

11.     Plaintiff MAO-MSO Recovery II, LLC is a Delaware entity with its principal place of business at 45 Legion Drive, Cresskill, New Jersey 07626.

12.     Numerous MAOs across the United States have assigned their rights to Plaintiffs to recover for direct payments related to Acthar.  As a result, Plaintiffs have standing to pursue the claims of its assignors.

13.     Defendant Mallinckrodt PLC is an Irish public limited company headquartered in Staines-upon-Thames, United Kingdom.

14.     Defendant Mallinckrodt PLC acquired Questcor on or about August 14, 2014. At that time, Questcor only sold Acthar. With Mallinckrodt PLC's acquisition, Questcor became a wholly owned subsidiary of Mallinckrodt PLC and subsequently changed its corporate name from Questcor Pharmaceuticals, Inc. to Mallinckrodt ARD Inc.  Mallinckrodt ARD, Inc. (referred to as Questcor in this Complaint) is an active, California corporation registered with the California Secretary of State with its headquarters in St. Louis, Missouri.

15.     Defendant UBC is a Delaware corporation with its corporate headquarters at 920 Harvest Drive, Blue Bell, Pennsylvania 19422. UBC is a wholly-owned subsidiary of Express Scripts Holding Company ("Express Scripts"), a Delaware Corporation, with its principle executive offices located at One Express Way, St. Louis, Missouri 63121.

16.     Whenever this Complaint references any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.  Each Defendant acted as the principal of, or agent for, all other Defendants with respect to the acts, violations, and common course of conduct described in this Complaint.

## **STANDING**

17.     Plaintiffs represent MAOs, which are private insurance companies that, for all practical and legal purposes, stand in the same shoes as the Centers for Medicare and Medicaid Services ("CMS") in providing Medicare benefits.  Traditional Medicare, administered by CMS, consists of Parts A and B of the Medicare Act. Part C is the Medicare Advantage program under which Medicare-eligible persons may elect to have an MAO provide Medicare benefits instead of CMS.  Under the Medicare Advantage program, an MAO administers the provision of Medicare benefits pursuant to a contract with CMS. *See* 42 U.S.C. § 1395w-27.  CMS pays the MAO a fixed fee per enrollee, and the MAO provides at least the same benefits as an enrollee would receive under traditional Medicare.  *See* 42 U.S.C. § 1395w-22(a), 1395w-23.  The MAO must provide the services rendered under Parts A and B. *See* 42 U.S.C. § 1395w-22.  Therefore, all regulations corresponding to Parts A and B are applicable to MAOs.

18.     Medicare Part D ("Part D"), or the Medicare Prescription Drug Benefit, is used to subsidize the costs of prescription drugs and prescription drug premiums for those on Medicare.  Part D is only offered through private companies and CMS does not

offer the benefits directly.  Generally, MAOs offering Part C benefits include Part D benefits for a fee and then receive reimbursement for the beneficiaries as well.

19.     MAOs exercise control over Pharmacy Benefit Managers ("PBM") and any other first tier and downstream entities.  Included in the Medicare Act and Code of Federal Regulations ("CFRs") are provisions that set forth the price that Medicare will pay for pharmaceuticals and the requirements that plan sponsors, in this case the class of MAOs, must utilize when contracting with the drug manufacturers.  Medicare's drug prices are set in conjunction with manufacturers.  Accordingly, Medicare and MAOs have directly negotiated prices for Acthar and, due to Defendants' monopolistic conduct, have over-paid for Acthar.  As rightful assignees, Plaintiffs have been overpaying for Acthar.  Thus, Plaintiffs have standing as direct payers via their MAO Assignors.

## FACTUAL ALLEGATIONS

20.     At its core, this case concerns Defendants' collective actions to carve out and maintain a monopoly for a rare drug category and to extract exponentially increasing, eye-gouging prices.  Defendants have fundamentally, anti-competitively altered the market landscape.

21.     Questcor purchased Acthar in 2001. Through anticompetitive conduct, Defendant Questcor extinguished threats to its monopoly relating to Acthar.  As a result, Acthar is the only therapeutic adrenocorticotropic hormone ("ACTH") product sold in the United States.

22.     ACTH is the standard of care treatment for children with infantile spasms. These spasms involve dangerous seizures during the first two years of a child's life. ACTH is also used to treat nephrotic syndrome—a kidney disorder—as well as some other disorders such as rheumatoid arthritis which occur in the elderly.

23.     About a decade ago, Questcor vertically integrated its sales and distribution through one exclusive distributor, Curascript.  Vertical integration is common in the business world.  However, in the context of specialty pharmaceuticals, this integration

supercharged Defendants' ability to extract exponentially increasing prices for Acthar.

24.     In 2001, the average price of Acthar was $40 per vial.  For the Assignor MAOs, Questcor now charges over $34,000 per vial—an 85,000% increase—from when Questcor purchased Acthar.

25.     Buying an Acthar vial is typically not a one-time expense for patients.  A course of Acthar treatment often requires multiple vials, costing in excess of $100,000 for one course of treatment.

26.     The Assignor MAOs paid these inflated prices.  Data going back to 2013 shows the average purchase price paid by the MAOs per vial for Acthar has been as follows:

//

//

//

//

//

//

//

//

//

//

//

COMPLAINT



27.    In stark contrast to the United Sates, elsewhere in the world, e.g. in Europe and Canada, doctors treat patients suffering from the same conditions that Acthar is used to treat with a different drug called Synacthen Depot ("Synacthen").  Synacthen is a synthetic ACTH drug, while Acthar is a natural ACTH drug.

28.    Until June 2013, Novartis AG ("Novartis") marketed and sold Synacthen abroad.  In 2011, Novartis decided to sell the rights to market Synacthen in the United States.  For years, Questcor viewed Synacthen as a significant, potential competitive threat to Acthar.

29.    Accordingly, Questcor outbid other companies to acquire the U.S. rights to Synacthen.  By acquiring Synacthen, Questcor created a market monopoly in the United States.  Questcor paid nearly ten times more than what a competitor offered to purchase Synacthen.

30.    Simply put, Defendants' monopolistic actions have had an adverse effect on Plaintiffs who have spent far more to purchase Acthar that it otherwise would.  The entire market has been altered.  Defendants have ensured that there would be no

COMPLAINT

competition, harming the market as a whole by reducing innovation and competition. Domestic release of Synacthen would have instantly created competition for Acthar, resulting in a lower price for the drug. Defendants have no valid business reason for Acthar's inflated price.

31.    As it relates to Synacthen, each alternative bidder expected to profitably sell Synacthen at a price well below Acthar's price. This demonstrates that Acthar is currently priced at an anti-competitive level. The lower prices that would prevail in a duopoly market containing Acthar and Synacthen show that Acthar is currently positioning Acthar at an anticompetitive price.

32.    On January 18, 2017, the Federal Trade Commission ("FTC") filed a three-count complaint based on the above referenced facts against Defendants on behalf of the FTC and various State Attorney Generals. These counts consisted of Monopolization in Violation of the FTC Act; Monopolization in Violation of the Sherman Act; and various state law claims.

33.    Twelve days after the complaint was filed, Defendants settled with the FTC for $100 million.

## CLASS ALLEGATIONS

34.    Plaintiffs bring this action on behalf of themselves and the following classes:

Class 1: All MAOs and related entities in the United States and its territories who purchased, paid, provided reimbursement, and/or possess the recovery rights to reimbursement, for some or all of the purchase price of Defendants' pharmaceutical, Acthar, pursuant to Medicare Part C contracts offering Medicare Part B services from January 1, 2011, to present. This class excludes: (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; (b) all federal and state governmental entities except for cities, towns, or municipalities with self-funded prescription drug plans; and (c) any judges or justices involved in this action and any members of their immediate families.

**Class 2:** All MAO, MA-PD, or PDP sponsors and related entities in the United States and its territories who purchased, paid, provided reimbursement, and/or possess the recovery rights to reimbursement, for some or all of the purchase price of Defendants' pharmaceutical, Acthar, pursuant to Medicare Part D contracts providing services from January 1, 2011, to present. This class excludes: (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; (b) all federal and state governmental entities except for cities, towns, or municipalities with self-funded prescription drug plans; and (c) any judges or justices involved in this action and any members of their immediate families.

35. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 both individually and on behalf of (a) a national injunctive class and/or (b) a national damages classes and/or (c) various state-wide damages sub-classes, during the period from January 1, 2011, to the present.

36. As discussed in this Class Action Complaint, Defendants have enjoyed ill-gotten gains from the sales of Acthar at the expense of Class Members, who suffered damages to their property and business. Such damages apply to all Class Members (and Plaintiffs as the rightful assignees of those organizations). Class action law has long recognized that, when a company engages in conduct that has uniformly harmed many claimants such as Plaintiffs, other direct payers, and consumers, class resolution is an effective tool to redress the harm.

37. Here, the Class Members have been deprived of property and money by being forced to purchase prescriptions of Acthar at unlawfully elevated prices as a direct result of Defendants engaging in anti-competitive conduct, as alleged throughout this Complaint.

38. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality,

typicality, and adequacy:

39.    Numerosity: There are hundreds of entities (including the organizations that assigned their rights to Plaintiffs) throughout the United States that were forced to pay artificially inflated, anti-competitive prices for Acthar.  Thus, the numerosity element for class certification is met.

40.    Commonality: Questions of law or fact are common to all members of the Class. Specifically, Defendants' misconduct was directed at all members of this Class. Defendants' illegal pattern of anticompetitive conduct had a common, adverse effect on all purchasers of Acthar.  All members of the Class have common questions of fact or law.  Each Class Member shares the same needed remedy, i.e., reimbursement for the inflated prices and lost money due to the Defendants' monopolistic actions, and imposition of injunctive and equitable relief to stop Defendants from continuing in their anti-competitive activities.

41.    Typicality: Plaintiffs' claims are typical of the claims of the Class because their claims arise from the same course of conduct by Defendants, i.e., anticompetitive prices.  Plaintiffs paid or reimbursed for prescriptions of Acthar at anti-competitive prices as a consequence of Defendants' actions.  Plaintiffs' claims are, therefore, typical of the Class.

42.    Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Its interests in vindicating these claims are shared with all members of the Class.  In addition, Plaintiffs are represented by competent and experienced counsel in class action litigation.

43.    The Class is properly brought and should be maintained as a class action under Rule 23(b) because a class action in this context is superior.  Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class.

44.    The Class is also properly brought and should be maintained as a class action under Rule 23(b)(2) and (b)(3).  Defendants have acted or refused to act on grounds

that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class.  Additionally, Defendants acted in such a way that questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

45.     Additionally, Plaintiffs and the putative Class contend that Defendants violated the federal antitrust laws by vertical price fixing and suffered harm by paying inflated anticompetitive prices for Acthar.  This injury is of the type the federal antitrust laws were intended to prevent and flows from that which makes Defendants' acts unlawful. The collusion and monopolistic activity between Defendants supplied an atmosphere which drove up the costs of Acthar, resulting in Class damages - Class members paid a price for Acthar that was higher than the but-for-price had there been no collusion or monopolistic activity between the Defendants.

## CAUSES OF ACTION

### Count I: Sherman Act Violations Pursuant to 15 U.S.C. §§ 2

46.     Plaintiffs incorporate by reference paragraphs 1 through 45 as if fully set forth herein.

47.     Defendants monopolized the market for the pharmaceutical Acthar, and thereby, violated the Sherman Act (15 U.S.C. § 2).

48.     While actively engaged in the management of Defendants' affairs, Defendants' officers, agents, employees, or representatives authorized Defendants' acts in furtherance of a contract, combination, or conspiracy.

49.     During the Class Period, Defendants bought the rights to bring Acthar's AB rated bioequivalent, Synachthen, to the United States.

50.     After purchasing these rights, Defendants have not brought to the market the AB rated bioequivalent and have not allowed any other entity to bring the pharmaceutical to market.

51.     These acts have caused unreasonable restraints of trade in the market for Acthar.

52.     As a result of Defendants' unlawful conduct, Plaintiffs and all other similarly situated Class Members that purchased Acthar have been harmed by paying inflated, anti-competitive prices.

53.     Defendants' actions had the following effects, among others: a) price competition in the market for Acthar has been restrained, suppressed, and/or eliminated in the United States; b) prices for Acthar provided by Defendants have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and c) Plaintiffs and Class Members who purchased Acthar from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

54.     Plaintiffs and the Class members are entitled to and shall recover threefold the damages sustained and the cost of suit, including a reasonable attorney's fee.

55.     Plaintiffs and the Class Members are also entitled to an injunction against Defendants, which will prevent and restrain the violations alleged herein.

## Count II: Sherman Act Violations Pursuant to 15 U.S.C. §§ 1 and 3

56.     Plaintiffs incorporate by reference paragraphs 1 through 55 as if fully set forth herein.

57.     As set forth above, Questcor has entered into exclusive agreements with its competitor in the European market, Novartis, its agent, UBC, and its exclusive specialty pharmacy distributor, Curascript, to preserve and extend its monopoly power and to allow it to maintain and extend its soaring prices for Acthar.

58.     There is no legitimate business justification on the part of Questcor for these exclusive and exclusionary agreements, and these agreements: (a) substantially foreclosed and excluded competition from other potential ACTH manufacturers and distributors, and (b) resulted in Questcor's willful maintenance and unlawful exercise of monopoly power in the market for ACTH drugs.

59.     At all relevant times, Questcor's exclusive and exclusionary agreements with UBC and other agents assisted Questcor in: (a) effectively excluding less expensive,

potentially superior competitive products from the ACTH drug market; (b) maintaining Questcor's dominant market share and monopoly power in the ACTH drug market; (c) maintaining prices at artificially elevated levels for Acthar; and (d) otherwise reaping the benefits of its illegal monopoly power. There is no procompetitive justification for Questcor's conduct.

60. Plaintiffs' injuries consist of paying higher prices to purchase Acthar than it would have paid absent Questcor's unlawful conduct. Plaintiffs' injuries are the type the antitrust laws were designed to prevent and flow from that which makes Questcor's conduct unlawful.

61. Defendants' acts and practices constitute anti-competitive agreements in unreasonable restraint of trade in violation of Section 1 and Section 3 of the Sherman Act, 15 U.S.C. §§ 1 and 3.

**Count III: Unjust Enrichment**

62. Plaintiffs repeat the allegations in paragraphs 1 through 61 as if fully set forth herein.

63. As a result of the unlawful conduct described above, Defendants have been unjustly enriched. At a minimum, Defendants were unjustly enriched by the receipt of improper profits from the sale of Acthar at unlawfully inflated prices.

64. As Defendants benefited from their unlawful acts, it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains.

65. Plaintiffs and the Class Members are entitled to: 1) the amount of Defendants' ill-gotten gains resulting from Defendants' unlawful, unjust, and inequitable conduct; and 2) the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the Class Members may make claims on a *pro rata* basis.

**Count IV: Violation of State Antitrust and Consumer Protection Statutes**

66. Plaintiffs repeat the allegations in paragraphs 1 through 65 as if fully set forth herein.

67. During the Class Period, Defendants and their co-conspirators engaged in a

continuing contract, combination or conspiracy with respect to the sale of Acthar, which resulted in unreasonable restraint of trade and commerce and in violation of various state statutes, as set forth below.

68.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain artificially anti-competitive prices for Acthar in the United States.

69.    Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including meetings and participating in conversations among themselves, which took place in the United States, during which they agreed to fix, increase, inflate, maintain, or stabilize prices that Plaintiffs and the Class Members paid for Acthar.

70.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful monopolization of Acthar.

71.    Defendants' anticompetitive conduct described above was knowing, willful and constituted violations or flagrant violations of several state antitrust statutes as described below.

**Arizona**

72.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Arizona Revised Statutes, §§ 44-1401, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) price competition for Acthar was restrained, suppressed, and eliminated throughout Arizona; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are

threatened with further injury.  Due to the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiffs and other similarly situated payers in the Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

### Arkansas

73.     Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et seq.*  Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Acthar was sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiffs and members of the Class.  The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).  Defendants' unlawful conduct had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Acthar prices were raised, fixed, maintained, and stabilized at artificially elevated levels throughout Arkansas; (3) Plaintiffs and the members of the Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers. As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Class have been injured in their business and property and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the Class seek all relief available under that statute.

### California

74.     Defendants have entered into an unlawful agreement in restraint of trade in

violation of California Business and Professions Code §§ 16700 *et seq*.  During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of trade and commerce described above in violation of California Business and Professions Code Section § 16720.  Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of Acthar at anti-competitive levels.  The aforesaid violations of Section 16720 consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of Acthar.  For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and creating a price floor, fixing, raising, and stabilizing the prices of Acthar.  The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) price competition for Acthar has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for Acthar provided by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased Acthar directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property in that they paid more for Acthar than they otherwise would have paid in the absence of Defendants' unlawful conduct.  Due to Defendants' violation of Section 16720, Plaintiffs and other similarly situated payers in the Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to California Business and Professions Code § 16750(a).

**California II**

16

COMPLAINT

75.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.* During the Class Period, Defendants manufactured, marketed, sold, or distributed Acthar in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above. This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law. The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code § 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.* of the California Business and Professions Code, set forth above. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.* of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent; (3) Defendants' acts or practices are unfair to purchasers of Acthar in the State of California within the meaning of Section 17200, California Business and Professions Code; and (4) Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code. Plaintiffs and members of the Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of

such business acts or practices.  The illegal conduct alleged herein is continuing and there is no indication that Defendants will cease such activity into the future.  The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the Class to pay anti-competitive and artificially-inflated prices for Acthar.  Plaintiffs and the members of the Class suffered injury in fact and lost money or property as a result of such unfair competition.  The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.  As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.  Plaintiffs and the members of the Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, §§ 17203 and 17204.

### District of Columbia

76.    Defendants have entered into an unlawful agreement in restraint of trade in violation of District of Columbia Code Annotated §§ 28-4501, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and other similarly situated payers in the Class including those who resided in the District of Columbia and/or purchased Acthar that was shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in the District of Columbia; and (4) Plaintiffs and other similarly situated payers in the Class, including those who resided in the District of Columbia and/or purchased Acthar in the District of Columbia that was shipped by Defendants or their co-conspirators, paid anti-competitive, artificially inflated prices

for Acthar, including in the District of Columbia.  During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated Class members, have been injured in their business and property and are threatened with further injury.  Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.*  Accordingly, Plaintiffs and other similarly situated payers seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

### District of Columbia II

77.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Acthar was sold, distributed or obtained in the District of Columbia.  The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904.  Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they was being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Acthar.  Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing Acthar because it was unaware of the unlawful overcharges and there was no alternative source of supply through which Plaintiffs could avoid the overcharges.  Defendants' conduct regarding sales of Acthar, including their illegal conspiracy to secretly fix the price of Acthar at anti-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public.  Defendants took grossly unfair advantage of Plaintiffs.  The suppression of competition that has resulted from Defendants' conspiracy has

ultimately resulted in unconscionably higher prices for purchasers so that there was a gross disparity between the price paid and the value received for Acthar. Defendants' unlawful conduct had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Acthar prices were raised, fixed, maintained, and stabilized at artificially elevated levels throughout the District of Columbia; (3) Plaintiffs and the Class were deprived of free and open competition; and (4) Plaintiffs and the Class paid anti-competitive, artificially inflated prices for Acthar.  As a direct and proximate result of the Defendants' conduct, Plaintiffs and members of the Class have been injured and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

**Florida**

78.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*  Defendants' unlawful conduct had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Florida; (2) Acthar prices were raised, fixed, maintained, and stabilized at artificially elevated levels throughout Florida; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid anti-competitive, artificially inflated prices for Acthar. During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

**Hawaii**

79.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq*.  Defendants' unlawful conduct had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Acthar prices were raised, fixed, maintained, and stabilized at artificially elevated levels throughout Hawaii; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

**Hawaii II**

80.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-1, *et seq*.  Defendants' unlawful conduct had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Acthar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are threatened with further injury.  Due to the foregoing, Defendants have entered into

agreements in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-4, *et seq*. Accordingly, Plaintiffs and other similarly situated payers in the Class seek all forms of relief available under Hawaii Revised Statutes Annotated §§ 480-4, *et seq*.

### Illinois

81. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act (740 Illinois Compiled Statutes 10/1, *et seq*.). Defendants' combinations or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Illinois; (2) Acthar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar. During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are threatened with further injury.

### Iowa

82. Defendants have entered into an unlawful agreement in restraint of trade in violation of Iowa Code §§ 553.1, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar. During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the

Class have been injured in their business and property and are threatened with further injury. Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq*. Accordingly, Plaintiffs and other similarly situated payers in the Class seek all forms of relief available under Iowa Code §§ 553, *et seq*.

### Kansas

83.   Defendants have entered into an unlawful agreement in restraint of trade in violation of Kansas Statutes Annotated, §§ 50-101, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) Acthar competition was restrained, suppressed, and eliminated throughout Kansas; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are threatened with further injury.  Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq*. Accordingly, Plaintiffs and other similarly situated payers in the Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq*.

### Maine

84.   Defendants have entered into an unlawful agreement in restraint of trade in violation of Maine Revised Statutes (Maine Rev. Stat. Ann. 10, §§ 1101, *et seq*.). Defendants' combinations or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Maine; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and other similarly situated payers in the Class were

deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are threatened with further injury.  Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*  Accordingly, Plaintiffs and other similarly situated payers in the Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

**Massachusetts**

85.    Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the Massachusetts Gen. Laws, Ch 93A, § 1, *et seq*.  Defendants were engaged in trade or commerce as defined by G.L. 93A.  Defendants, in a market that includes Massachusetts, agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Acthar was sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiffs and members of the Class.  The aforementioned conduct on the part of the Defendants constituted "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," in violation of Massachusetts Gen. Laws, Ch 93A, § 2, 11.  Defendants' unlawful conduct had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) Acthar prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and the members of the Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct substantially affected Massachusetts commerce and consumers.  As a direct

1   and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the

2   members of the Class have been injured in their business and property and are

3   threatened with further injury.  Defendants have engaged in unfair competition or

4   unfair or deceptive acts or practices in violation of Massachusetts Gen. Laws, Ch 93A,

5   §§ 2, 11, that were knowing or willful, and, accordingly, Plaintiffs and the members of

6   the Class seek all relief available under that statute, including multiple damages.

### Michigan

86.   Defendants have entered into an unlawful agreement in restraint of trade in

violation of Michigan Compiled Laws Annotated §§ 445.771, *et seq*.  Defendants'

combinations or conspiracies had the following effects: (1) Acthar competition was

restrained, suppressed, and eliminated throughout Michigan; (2) Acthar prices were

raised, fixed, maintained and stabilized at artificially high levels throughout Michigan;

(3) Plaintiffs and other similarly situated payers in the Class were deprived of free and

open competition; and (4) Plaintiffs and other similarly situated payers in the Class

paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period,

Defendants' illegal conduct substantially affected Michigan commerce.  As a direct

and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly

situated payers in the Class have been injured in their business and property and are

threatened with further injury.  Due to the foregoing, Defendants have entered into

agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§

445.771, *et seq*. Accordingly, Plaintiffs and other similarly situated payers in the Class

seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq*.

### Minnesota

87.   Defendants have entered into an unlawful agreement in restraint of trade in

violation of Minnesota Annotated Statutes §§ 325D.49, *et seq*.  Defendants'

combinations or conspiracies had the following effects: (1) Acthar competition was

restrained, suppressed, and eliminated throughout Minnesota; (2) Acthar prices were

raised, fixed, maintained and stabilized at artificially high levels throughout

Minnesota; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are threatened with further injury.  Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiffs and other similarly situated payers in the Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

**Mississippi**

88.     Defendants have entered into an unlawful agreement in restraint of trade in violation of Mississippi Code Annotated §§ 75-21-1, *et seq.*  Defendants' combinations or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are threatened with further injury.  Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.* Accordingly, Plaintiffs and other similarly situated payers in the Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

**Missouri**

89.     Defendants have engaged in unfair competition or unfair, unconscionable, or

deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq*. Plaintiffs and members of the Class purchased Acthar for personal or family purposes. Defendants engaged in the conduct described herein regarding the sale of Acthar in trade or commerce in a market that includes Missouri. Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Acthar was sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Class. Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Class concerning Defendants' unlawful activities and artificially inflated prices for Acthar. The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Class as they related to the cost of Acthar they purchased. Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Acthar by making public statements that were not in accord with the facts. Defendants' statements and conduct concerning the price of Acthar were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Class to believe that they were purchasing Acthar at prices established by a free and fair market. Defendants' unlawful conduct had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Missouri; (2) Acthar prices were raised, fixed, maintained, and stabilized at artificially elevated levels throughout Missouri; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid anti-competitive, artificially inflated prices for Acthar. The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act. As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Class suffered ascertainable loss of money or property. Accordingly, Plaintiffs and members of the Class seek all relief available

under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

### Montana

90.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et seq.* Defendants' unlawful conduct had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Montana; (2) Acthar prices were raised, fixed, maintained, and stabilized at artificially elevated levels throughout Montana; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants marketed, sold, or distributed Acthar in Montana, and Defendants' illegal conduct substantially affected Montana commerce and consumers.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et seq.*, and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

### Nebraska

91.     Defendants have entered into an unlawful agreement in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.*  Defendants' combinations

or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are threatened with further injury.  Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq*.  Accordingly, Plaintiffs and other similarly situated payers in the Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

### Nevada

92.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Nevada Revised Statutes Annotated §§ 598A.010, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are threatened with further injury.  Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A, *et seq.* Accordingly, Plaintiffs and other similarly situated payers in the Class seek all relief

available under Nevada Rev. Stat. Ann. §§ 598A, *et seq.*

### New Hampshire

93.    Defendants have entered into an unlawful agreement in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Acthar competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are threatened with further injury.  Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq*.  Accordingly, Plaintiffs and other similarly situated payers in the Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

### New Mexico

94.    Defendants have entered into an unlawful agreement in restraint of trade in violation of New Mexico Statutes Annotated §§ 57-1-1, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other

similarly situated payers in the Class have been injured in their business and property and are threatened with further injury.  Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.*  Accordingly, Plaintiffs and other similarly situated payers in the Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

### New Mexico II

95.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which Acthar was sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Class.  The conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, inter alia, resulted in a gross disparity between the value received by Plaintiffs and the members of the Class and the prices paid by them for Acthar as set forth in N.M.S.A., § 57-12-2E.   Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they was being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Acthar. Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price.  Moreover, Plaintiffs lacked any meaningful choice in purchasing Acthar because it was unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs could avoid the overcharges.  Defendants' conduct regarding sales of Acthar, including their illegal conspiracy to secretly fix the price of Acthar at anti-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public.  Defendants took grossly unfair advantage of Plaintiffs.  The suppression of competition that has

resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for Acthar.  Defendants' unlawful conduct had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Acthar prices were raised, fixed, maintained, and stabilized at artificially elevated levels throughout New Mexico; (3) Plaintiffs and the members of the Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.  As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Class have been injured and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and the members of the Class seek all relief available under that statute.

## New York

96.     Defendants have entered into an unlawful agreement in restraint of trade in violation of New York General Business Laws §§ 340, *et seq.*  Defendants' combinations or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout New York; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar that were higher than they would have been absent the Defendants' illegal acts.  During the Class Period, Defendants' illegal conduct substantially affected New York commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are

threatened with further injury.  Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq*.  The conduct set forth above is a *per se* violation of the Act.  Accordingly, Plaintiffs and other similarly situated payers in the Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

**New York II**

97.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq*. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Acthar was sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Class. Defendants and their co-conspirators made public statements about the prices of Acthar that either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for Acthar; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.  Because of Defendants' unlawful trade practices in the State of New York, New York class members who indirectly purchased Acthar were misled to believe that they were paying a fair price for Acthar or the price increases for Acthar were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy. Defendants knew that their unlawful trade practices with respect to pricing Acthar would have an impact on New York consumers and not just the Defendants' direct customers.  Defendants knew that their unlawful trade practices with respect to pricing Acthar would have a broad impact, causing consumer class members who indirectly purchased Acthar to be injured by paying more for Acthar than they would have paid in the absence of Defendants' unlawful trade acts and practices.  The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices

within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of the state of New York in an honest marketplace in which economic activity is conducted in a competitive manner.  Defendants' unlawful conduct had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout New York; (2) Acthar prices were raised, fixed, maintained, and stabilized at artificially elevated levels throughout New York; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants marketed, sold, or distributed Acthar in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers.  During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates, dominated and controlled, manufactured, sold and/or distributed Acthar in New York.  Plaintiffs and members of the Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

### North Carolina

98.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq.*  Defendants' combinations or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are threatened with further injury.  Due to the

foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq*.  Accordingly, Plaintiffs and other similarly situated payers in the Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq*.

## North Carolina II

99.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Acthar was sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Class. Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts.  Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware.  Defendants and their co-conspirators publicly provided pretextual and false justifications regarding their price increases. Defendants' public statements concerning the price of Acthar created the illusion of competitive pricing controlled by market forces rather than anti-competitive pricing driven by Defendants' illegal conspiracy.  Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders.  The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner. Defendants' unlawful conduct had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Acthar

prices were raised, fixed, maintained, and stabilized at artificially elevated levels throughout North Carolina; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants marketed, sold, or distributed Acthar in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers. During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Acthar in North Carolina.  Plaintiffs and members of the Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

### North Dakota

100.   Defendants have entered into an unlawful agreement in restraint of trade in violation of North Dakota Century Code §§ 51-08.1-01, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are threatened with further injury.  Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of North

Dakota Cent. Code §§ 51-08.1-01, *et seq*.  Accordingly, Plaintiffs and other similarly situated payers in the Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq*.

### Oregon

101.   Defendants have entered into an unlawful agreement in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are threatened with further injury.  Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq*.  Accordingly, Plaintiffs and other similarly situated payers in the Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq*.

### Rhode Island

102.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act (R.I. Gen. Laws §§ 6-13.1-1, *et seq*.).  Members of this Class purchased Acthar for personal, family, or household purposes.  Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Acthar was sold, distributed, or obtained in Rhode Island. Defendants deliberately failed to disclose material facts to Plaintiffs and

members of the Class concerning Defendants' unlawful activities and artificially inflated prices for Acthar.  Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence.  Defendants misrepresented to all purchasers during the Class Period that Defendants' Acthar prices were competitive and fair.  Defendants' unlawful conduct had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Acthar prices were raised, fixed, maintained, and stabilized at artificially elevated levels throughout Rhode Island; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid anti-competitive, artificially inflated prices for Acthar.  As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Acthar, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Acthar at prices set by a free and fair market.  Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Class as they relate to the cost of Acthar they purchased.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

### South Carolina

103.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act (S.C. Code Ann. §§ 39-5-10, *et seq*.).  Defendants' combinations or conspiracies had

the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Acthar prices were raised, fixed, maintained, and stabilized at artificially elevated levels throughout South Carolina; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid anti-competitive, artificially inflated prices for Acthar. During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq*., and, accordingly, Plaintiffs and the members of the Class seek all relief available under that statute.

### South Dakota

104. Defendants have entered into an unlawful agreement in restraint of trade in violation of South Dakota Codified Laws §§ 37-1-3.1, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar. During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are threatened with further injury. Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq*. Accordingly, Plaintiffs and other similarly situated payers in the Class seek all relief available under South Dakota

Codified Laws Ann. §§ 37-1, *et seq*.

**Tennessee**

105.   Defendants have entered into an unlawful agreement in restraint of trade in violation of Tennessee Code Annotated §§ 47-25-101, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are threatened with further injury.  Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq*.  Accordingly, Plaintiffs and other similarly situated payers in the Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq*.

**Utah**

106.   Defendants have entered into an unlawful agreement in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Utah; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly

situated payers in the Class have been injured in their business and property and are threatened with further injury.  Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq.*  Accordingly, Plaintiffs and other similarly situated payers in the Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq.*

## Vermont

107.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq.*  Defendants' combinations or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are threatened with further injury.  Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq.*  Accordingly, Plaintiffs and other similarly situated payers in the Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq.*

## Vermont II

108.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*  Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Acthar was sold, distributed, or obtained in Vermont.  Defendants deliberately failed to disclose material facts to Plaintiffs and

members of the Class concerning Defendants' unlawful activities and artificially inflated prices for Acthar.  Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence.  Defendants misrepresented to all purchasers during the Class Period that Defendants' Acthar prices were competitive and fair.  Defendants' unlawful conduct had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Acthar prices were raised, fixed, maintained, and stabilized at artificially elevated levels throughout Vermont; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid anti-competitive, artificially inflated prices for Acthar.  As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Acthar, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Acthar at prices set by a free and fair market.  Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, et seq., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

### West Virginia

109.   Defendants have entered into an unlawful agreement in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq*.  Defendants' combinations or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia;

42

COMPLAINT

(3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are threatened with further injury.  Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq*. Accordingly, Plaintiffs and other similarly situated payers in the Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq*.

### Wisconsin

110.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01*, et seq*.  Defendants' combinations or conspiracies had the following effects: (1) Acthar price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Acthar prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and other similarly situated payers in the Class were deprived of free and open competition; and (4) Plaintiffs and other similarly situated payers in the Class paid anti-competitive, artificially inflated prices for Acthar.  During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and other similarly situated payers in the Class have been injured in their business and property and are threatened with further injury.  Due to the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq*. Accordingly, Plaintiffs and other similarly situated payers in the Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq*.  Plaintiffs and other similarly situated payers in the Class in each of the above states have been injured in their business and property due to Defendants' unlawful combination, contract, conspiracy

and agreement. Plaintiffs and other similarly situated payers in the Class have paid more for Acthar than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful. In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of members of Plaintiffs and other similarly situated payers in the Class. Accordingly, Plaintiffs and other similarly situated payers in the Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

## JURY TRIAL DEMAND

111. Plaintiffs demand a trial by jury on all triable issues within this pleading pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, individually and on behalf of the Class described herein, pray for the following relief:

a.     Find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), and certify the respective Class;

b.     Designate Plaintiffs as representatives for the respective class and Plaintiffs' undersigned counsel as Class Counsel for the respective class;

c.     Issue a judgment against Defendants that:

i.     Adjudges and decrees that Defendants violated Sections 1, 2, and 3 of the Sherman Act, 15 U.S.C. §§1, 2, and 3.

ii.     Enjoins and restrains Defendants, their affiliates, assignees, subsidiaries, successors, and transferees, and their officers, directors, partners,

agents and employees, and all other persons acting or claiming to act on their behalf or in concert with them, from continuing to engage in any anticompetitive conduct and from adopting in the future any practice, plan, program, or device having a similar purpose or effect to the anticompetitive practices set forth above

      iii.    Awards to Plaintiffs and the Class disgorgement of the Defendants' ill-gotten gains and any other equitable relief as the Court finds appropriate to redress Defendants' violations of federal law or restore competition;

      iv.    Awards to Plaintiffs and the Class treble damages, their costs, and reasonable attorney's fees, plus interest;

      v.    Grants Plaintiffs and the Class alleged herein such other and further relief as the Court deems just and proper under the circumstances.

Dated:  October 30, 2017

**BAUM HEDLUND ARISTEI & GOLDMAN, P.C.**

  /s/ R. Brent Wisner

R. Brent Wisner, Esq. (SBN 276023)
rbwisner@baumhedlundlaw.com
Michael L. Baum, Esq. (SBN 119511)
mbaum@baumhedlundlaw.com
Adam M. Foster Esq., (SBN 301507)
afoster@baumhedlundlaw.com
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel:  (310) 207-3233
Fax:  (310) 820-7444

**PENDLEY, BAUDIN & COFFIN, LLP**
Christopher L. Coffin (to be admitted *pro hac vice*)
1515 Poydras Street, Suite 1400
New Orleans, LA 70112
Phone: (504) 355-0086
ccoffin@pbclawfirm.com

*Attorneys for Plaintiffs*